United States District Court
Southern District of Texas
FILED

JUN 1 0 2005

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BELINDA MATA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. B-04-092 |
| | ) | |
| CAMERON COUNTY HEALTH | ) | |
| DEPARTMENT, CAMERON COUNTY, | ) | |
| Defendant. | ) | |

# CAMERON COUNTY'S MOTION FOR SUMMARY JUDGMENT
# AND SUPPORTING MEMORANDUM

Attorneys for Cameron County,

CIVIL LEGAL DEPARTMENT
COMMISSIONERS COURT
964 East Harrison Street
Brownsville, Texas 78520
Telephone: (956) 550-1345
Facsimile: (956) 550-1348

Richard O. Burst
Attorney In Charge
Texas State Bar No. 00785586
Federal Bar No. 15515

Dylbia L. Jefferies – Vega
Of Counsel
Texas State Bar #00786516
Federal Bar No. 17065

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

BELINDA MATA, Plaintiff        §
                               §
V.                             §    CASE NO. B-04-092
                               §
CAMERON COUNTY HEALTH          §
DEPARTMENT, THE COUNTY OF      §
CAMERON, Defendant             §

**TABLE OF CONTENTS**

**Table of Contents** ............................................................. i

**Index of Authorities** ........................................................ ii

CAMERON COUNTY'S MOTION FOR SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW

I.   **Nature and Stage of Proceedings** ........................................ 1

II.  **Statement of Facts** ..................................................... 2

III. **Statement of Issues to be Ruled on by the Court** ........................ 5

IV.  **Summary Judgement Evidence** ............................................. 5

V.   **Argument and Authorities** ............................................... 6

     A.   Standard of Review ................................................... 6
     B.   Yvette Salinas as the Cameron County Health Administrator
          is not a policy maker for Cameron County, Texas ...................... 7
     C.   Defendant had a legitimate reason for terminating Plaintiff .......... 9
     D.   No conduct of Plaintiff's is protected by the First
          Amendment ........................................................... 11
     E.   State Claim - Even if Plaintiff was terminated for refusing
          to do an illegal act, which is not admitted, County's sovereign
          Immunity is not waived for "Sabine Pilot" claims ..................... 13
     F.   State Claim - Plaintiff's whistle blower claim is barred
          by the 90 day filing deadline. V.T.C.A., Govn. Code,
          Section 554.005 ...................................................... 13

VI.  **Conclusion** ............................................................ 14

VII. **Prayer** ................................................................ 14

INDEX OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242, 106 S.Ct 2505, 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Beattie v. Madison County School District*
    254 F.3d 595 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bradshaw v. Pittsburg I.S.D.*
    207 F.3d 814 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brady v. Fort Bend County*
    145 F.3d 691 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Carroll v. Black*
    938 S.W.2d 134 (Tex.App.-Waco 1996, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Celotex Corp. v. Catrell*
    477 U.S. 317 106 S.Ct. 2548, 91 L.E.2d 265 91986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*City of St. Louis v. Praprotnik*
    485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gillum v. City of Kerrville*
    3 F.3d117 (5th Cir. 1993), *cert. den.*, 510 U.S. 1072 (1994) . . . . . . . . . . . . . . . . . . . . . 12

*Ibarra v. Houston I.S.D.*
    84 F.Supp.2d 825 (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Matsushita Electric Industrial Co. v. Zenith radio Corp.*
    475 U.S. 560, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Monell v. Dept. of Social Services of the City of New York*
    436 U.S.658, 98 S.Ct. 2018, 56 L.Ed.2d 452 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*
    429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pembaur v. City of Cincinnati*
    475 U.S. 469, 106 S.Ct. 1292; 89 L.Ed.2d 452 (1986) . . . . . . . . . . . . . . . . . . . . . . 7,8,9

*Redmon v. Dallas Area Rapid Transit*
    2001 WL 182849, at *1 (N.D.Tex. Jan. 22, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sabine Pilot Service, Inc. v. Hauck*
 687 SW2d 733 (1985) ................................................. 13

*Salazar v. Lopez*
 88 S.W.3d 351 (Tex.App.-San Antonio 2002) ................................. 13

*Teague v. City of Flower Mound*
 179 F.3d 377 (5th Cir. 1999) ........................................... 12

*University of Texas Medical Brach at Galveston v. Hohman*
 6 S.W.3d 767 (Tex.App-Houston [1st Dist.] 1999, pet, dismi'd w.o.j.) .............. 13

## CONSTITUTION AND STATUTES

Texas Const., Art. 5, Sec. 18(b) ............................................... 8

V.T.C.A., Govn. Code, Section 554.005 ..................................... 5,14

V.T.C.A., H & S Code, Section 121.031 ......................................... 8

V.T.C.A., H & S Code, Section 121.033 ....................................... 8,9

V.T.C.A., Local Govn. Code, Sec. 85.003(c) ..................................... 9

42 U.S.C. § 1983 ........................................................ 1,7

## RULES

F.R.C.P. 56(b) ............................................................ 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| BELINDA MATA,            )<br>     Plaintiff,           )<br>                          )<br>v.                        )<br>                          )<br>CAMERON COUNTY HEALTH     )<br>DEPARTMENT, CAMERON COUNTY, )<br>     Defendant.          ) | CASE NO. B-04-092 |

## CAMERON COUNTY'S MOTION FOR SUMMARY JUDGMENT
## AND SUPPORTING MEMORANDUM

Defendant, Cameron County, pursuant to the provisions of Rule 56(b) of the Federal Rules of Civil Procedure, moves for summary judgment against Belinda Mata, Plaintiff in this cause, and in support thereof incorporates the following memorandum of law:

### I. Nature and Stage of Proceedings

1.  The Plaintiff is a former employee of the Cameron County Health Department who sued pursuant to 42 U.S.C. § 1983 complaining that Defendant retaliated against her for speaking on matters of public concern. The Plaintiff contends that the alleged actions by Defendant constitute an infringement of her rights under the First Amendment to the United States Constitution. Plaintiff also contents (in the Original Petition) that she was discharged for refusing to do an illegal act, and factually alleges violation of the state whistle blower act, although in open court Plaintiff through counsel has represented that she is not making a state whistle blower claim. The discovery period ended on May 31, 2005 and this motion is timely as dispositive motions are due by June 17, 2005.

1

## II. Statement of Facts

2.   Plaintiff was hired by the Cameron County Health Administrator (Ex 2, Paragraphs 2 & 9). Her first day of employment was April 5, 2002 (Ex 2, Paragraph 4; and Ex 3, 20:12-22); Plaintiff was terminated by the Cameron County Health Administrator (Ex 2, Paragraphs 2 & 9). Her employment was terminated on June 5, 2002 (Ex 3, 20:23-21:3). Plaintiff was told she would be working from 8:00 to 5:00 (Ex 3, 97:4-7).

3.   While she was employed with the County Health Department she was assigned a cell phone (Ex 3, 96:15-17). There was no reason she could not use that cell phone to call when she was going to be tardy or late (Ex 3, 96:25-97:3).

4.   On April 16 Plaintiff did not report for work until 9:30 a.m., and was subsequently given a "CAMERON COUNTY **WARNING NOTICE**" (Ex 2, Paragraph 5, with notice attached; Ex 3, 71:1-15 with notice marked "Mata Ex 9", and Ex 4, Paragraphs 3 & 5, with notice attached.) The following appears on the notice:

> As this incident occurred within Ms. Mata's first month of employment with the Health Department, she was not familiar with the telephone numbers in order to contact a Health Department employee. During the conference with her on April 18, 2002, I provided Ms Mata my cellular numbers of both my work and personal phones. I reminded Ms. Mata of the need to telephone me to notify me of any intended absence or tardiness. If necessary I informed Ms. Mata she could also contact me the night before and let me know about the possibility of her absence/tardiness.

Plaintiff identified her signature at the bottom of the Warning Notice, stated she read the form before she signed it, that she agreed with it, and stated that she was provided cell and personal phone numbers in order to contact her supervisor if she had the need to be late or absent again. (Ex 3, 71:1-19).

5.     On April 23, 2002, Ms. Mata did not report for work. She was given a verbal warning by her immediate administrative supervisor, Esmeralda Guajardo and a verbal warning documentation was placed in her file (Ex 2, Paragraph 6 with verbal documentation attached; and Ex 4, Paragraphs 4, 6, 7, 8 & 9, with verbal documentation attached). The following appears in the verbal documentation:

> INCIDENT:
> On April 23, 2002, Ms. Mata did not appear at work and did not report her absence until approximately 8:45 a.m. when I called her on the cell phone. As per Ms. Mata she stated she would be in at 10:00 a.m.. Ms. Mata failed to report to work at 10:00 and we did not hear from her until 1:08 p.m. when I received a message from Danny Cruz that Ms. Mata had called a few minutes earlier and she had stated that she would not be coming in to work.
>
> FOLLOW-UP:
> On April 24, 2002, I met with Ms. Mata and Martha Canas, Office Manager, to counsel Ms. Mata on this incident. I explained to Ms. Mata that this was the second incident in which she failed to call in to inform us that she would be late/absent and if a 3rd incident was to occur, it would lead to disciplinary action in terms of termination. Ms. Mata explained that she was having difficulty adjusting to day work as she is used to night work; however, I informed her that this position required an individual to be at the office during the day to address any concerns from Administration. I explained that as her position also requires contact with TDH and offices which operate during the standard working hours of 8:00 a.m. – 5:00 p.m., she needed to work within these constraints to accommodate them as well.
> I reminded Ms. Mata that during a previous conference with her on April 18, 2002, I had provided Ms. Mata my cellular numbers to both my work and personal phones and that she needed to telephone me to notify me of any intended absence or tardiness. I, again, informed Ms. Mata that she could also contact me the night before and let me know about the possibility of her absence/tardiness.

Plaintiff testified that she did not remember this verbal reprimand, but she does not deny it happened (Ex 3, 71:20-73:24 and 74:7-10).

6.     The following colloquy appears in Plaintiff's deposition (Ex 3, 74:16-75:19):

> Q. [Defendant's attorney] I'm going to hand you what's been marked as Exhibit No. 11[to

3

>    Plaintiff's deposition]. Do you recognize that note?
>    A. [Plaintiff] Yes, sir.
>    Q. On June 4th, 2002, did you leave that note on the front door of the Cameron County –
>    A. Yes.
>    Q. Okay. Did you call your supervisor, Ms. Guajardo, in advance to let her know you were going to be late or absent?
>    A. No, sir. I left – that's why I left this note.
>    Q. And then when she sat down with you, and on the report your signed, Exhibit No. 9 [to Plaintiff's deposition], did she provide you with your cell phone and her personal phones so you could call her?
>    A. Yes, sir.
>    Q., Did you try to call her?
>    A. Not that day, no, sir.
>    Q. Okay. You had explicit instruction to do – to call her if you were going to be late or absent, did you not?
>    A. I had instructions.
>    Q. And you disobeyed those instructions, did you not?
>    A. By leaving this note, yes, I did.

7.  At just before 5:00 p.m. on June 4, 2002, Plaintiff's employment was terminated.

8.  Yvette Salinas is the Health Administrator for the Cameron County Department of Health and Human Services. (Ex.1, 11:1-5). She has about 250 employees under her control. (Ex.1, 46:18-22.) She is the only person in the Health Department that has the authority to terminate an employee. (Ex.1, 32:10-11.).

9.  Yvette Salinas made the decision to terminate Plaintiff on the recommendation of Plaintiff's immediate supervisor, Esmer Guajardo, who informed Yvette of the third instance that Plaintiff did not follow the procedure for reporting an intended absence or lateness, and that a note had been left on the door for all the staff to see when they got to work. (Ex1, 30:13-23; and 32:10-15.) Yvette testified that it would be difficult to continue to employ somebody who was not following reporting procedures, and that she could not have other employees following that type of example. (Ex.1, 43:21-44:1; and 114:3-8.)

10. Yvette stated that a phone call instead of a note would have been a conversation and an understanding between Plaintiff and her supervisor. (Ex.1, 40:20-41-13.) This was the third reporting violation within the short amount of time Plaintiff had been employed, and Yvette did not believe that Plaintiff could follow the procedure of reporting absences/tardiness. (Ex.1, 42;5-7; and 107:35-108-20.)

### III. Statement Of Issues To Be Ruled On By The Court

11. The Defendant seeks dismissal and summary judgment on the grounds that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law on the following issues:

   11.1   Yvette Salinas as the Cameron County Health Administrator is not a policy maker for Cameron County, Texas.

   11.2   Defendant had a legitimate reason for terminating Plaintiff even if Plaintiff's conduct was protected by the First Amendment, which is not admitted.

   11.3   No conduct of Plaintiff is protected by the First Amendment.

   11.4   State claim – Even if Plaintiff was terminated for refusing to do an illegal act, which is not admitted, County's sovereign immunity is not waived for "Sabine Pilot" claims.

   11.5   State claim – Plaintiff's whistle blower claim is barred by the 90 day filing deadline. V.T.C.A., Govn. Code, Section 554.005.

### IV. Summary Judgment Evidence

12. The following is Defendant's summary judgment evidence, which is attached and adopted herein by reference:

12.1   Exhibit 1 – Excerpts from deposition of Yvette Salinas, Health Administrator for the Cameron County Health Department;

12.2   Exhibit 2 – Affidavit of Yvette Salinas;

12.3   Exhibit 3 – Excerpts and exhibits from deposition of Plaintiff;

12.4   Exhibit 4 – Affidavit of Esmeralda Guajardo.

12.5   Exhibit 5 – Affidavit of Manuel Villarreal.

12.6   Exhibit 6 – Affidavit of Jack Sims.

## V. Argument and Authorities

### A. Standard of Review

13.   Rule 56(b), Federal Rules of Civil Procedure provides that a defending party may, at any time, move, with or without supporting affidavits for summary judgment in the party's favor. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

14.   A Party seeking summary judgment bears the initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrell*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.E.2d 265 (1986). Where a party will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial. *Id.,* at 322-323, 106 S.Ct. at 2552-

2553.

15. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct 2505, 91 L.Ed.2d 202 (1986). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Where the record as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith radio Corp.,* 475 U.S. 560, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**B. ISSUE ONE: Yvette Salinas as the Cameron County Health Administrator is not a policymaker for Cameron County, Texas.**

16. Plaintiff asserts a claim against Defendant County for violation of protected speech under the First Amendment and 42 U.S.C. Section 1983. But, Plaintiff neither alleges nor is there evidence that the constitutional violation, if any, resulted from County policy or a single act of a policymaker.

17. "... [A] local government may not be sued under Section 1983 for an injury inflicted solely by it s employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Monell v. Dept. of Social Services of the City of New York,* 436 U.S.658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 452 (1978); see also, *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81, 106 S.Ct. 1292, 1298-99; 89 L.Ed.2d 452 (1986).

18.  In this case Plaintiff was terminated by an appointed department head – Yvette Salinas. (Ex.2, Paragraphs 2 & 12.) "The . . . commissioners court of a county may establish a local health department by majority vote." V.T.C.A., H & S Code, Section 121.031. "The . . . commissioners court of a county shall appoint the director of the . . . county's local health department." V.T.C.A., H & S Code, Section 121.033. Ms. Salinas was appointed by the Commissioners Court as the Director of the Cameron County Department of Health and Human Services. (Ex. 2, Paragraph 2; and Ex. 1, 22:9-23:5.)

19.  Yvette Salinas has authority delegated from the Commissioners Court to hire and terminate the employees in her department (Ex. 1, 71:10 & 30:15-16; and Ex. 2, Paragraph 2), but, the Cameron County Commissioners Court under its constitutional powers sets the employment policy for the County. Texas Const., Art. 5, Sec. 18(b). In that roll the commissioners court has adopted, and from time to time revised, County Policy. (Ex. 2, Paragraph 3 and Ex. 5.)

20.  This case fits the hypothetical in *Pembaur*.

> "Thus, for example, the County Sheriff [health administrator in the case at bar] may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, If county employment policy was set by the Board of County Commissioners, only that body's decisions would." *Id*, at 483 {FN12].

21.  Likewise, Yvette Salinas as the appointed Administrator for the County health department has discretion to hire and fire without also being the County official (County Commissioners Court) responsible for establishing County employment policy. See, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108, 124-30, 108 S.Ct. 915, 924-28, 99 L.Ed.2d 107 (1988); *Cf.*,

*Beattie v. Madison County School District*, 254 F.3d 595, 602-03 (5th Cir. 2001); and, *Compare, Brady v. Fort Bend County*, 145 F.3d 691, 699-700 (5th Cir. 1998)(unlike the *Pembaur* hypothetical sheriff, Texas Sheriffs have been vested by the Texas legislature with final policymaking authority in hiring and firing deputies.)

22. An elected sheriff in Texas is vested by the legislature with final authority to hire or fire (V.T.C.A., Local Govn. Code, Sec. 85.003(c)); he answers only to the voters of the County for his employment actions; that is, if the voters do not like his employment decisions, in the next election they can vote for someone else, but no one reviews his decisions to hire and fire.

23. Yvette Salinas, as the Cameron County Health Administrator, is an appointed by the Cameron County Commissioners Court; and she has been given discretion to hire and fire by the Cameron County Commissioners Court, not elected by the voters; she serves at the discretion of the Commissioners Court (Section 121.033, *supra*), and subject to their review for her decisions. (Ex.1, 18:23-25.) Moreover, she is subject to the employment policy established by the Commissioners Court.  (Ex. 2, Paragraph 3 and Ex. 5.)

24. The Cameron County Health Administrator, Yvette Salinas, is not a final policy maker for Cameron County. Therefore, Defendant County cannot be held accountable for her actions.

**C. ISSUE TWO: Defendant had a legitimate reason for terminating Plaintiff.**

25. The appropriate framework for analyzing plaintiff's claim is that of *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)*. Under *Mt. Healthy*, the employee has the initial burden of demonstrating (1) that his conduct was protected by the First Amendment, and (2) that this conduct was a "substantial" or "motivating" factor in the employer's action. If the employee survives this threshold, the burden then shifts to

9

the employer (3) to show, by a preponderance of the evidence, a legitimate reason for which it would have taken the same action against the employee even in the absence of this protected conduct. *Id.*

26.  As set forth in the Statement of Facts (cited to the MSJ evidence) Plaintiff only worked for Cameron County for two months from April 5, 2002 through May 4, 2002. During that two months, three times she failed to follow notification procedure that she was going to miss work or be late – April 18th, April 23rd, and June 4th. On June 4th at the end of the day her employment was terminated.

27.  County's employment policy as set forth in the manual and handbook states: "Disciplinary action may be taken against an employee for various reasons, which include but are not limited to the following examples:" . . . Absence without leave, including failure to notify a supervisor of sick leave and repeated tardiness or early departure." (Ex. 1, 38:5-39:5 with Section 12.01 marked Salinas Exhibit No. 1.) This policy was established by the Cameron County Commissioners Court. (Ex. 2, Paragraph 3 and Ex. 5.) It leaves the manner of expected notification up to the supervisor, but sets the required policy.

28.  Because of Plaintiff's first absence without notice she was given a written notice by her supervisor of what is expected. She signed the notice, and it was placed in her file. It in part read as follows:

> During the conference with her on April 18, 2002, I provided Ms Mata my cellular numbers of both my work and personal phones. I reminded Ms. Mata of the need to telephone me to notify me of any intended absence or tardiness. If necessary I informed Ms. Mata she could also contact me the night before and let me know about the possibility of her absence/tardiness. (Ex 2, Paragraph 5, with notice attached; Ex 3, 71:1-15 with notice marked "Mata Ex 9", and Ex 4, Paragraphs 3 & 5, with notice attached.)

10

29.   Plaintiff identified her signature at the bottom of the Warning Notice, stated she read the form before she signed it, that she agreed with it, and stated that she was provided cell and personal phone numbers in order to contact her supervisor if she had the need to be late or absent again. (Ex 3, 71:1-19).

30.   Even though Plaintiff had been provided a County cell phone and had been given the home and work cell phone numbers of her supervisor, Plaintiff failed to follow the notification procedure set out in the written warning notice on two subsequent occasions – April 23rd and June 4th. As a result of the second absence without notice she was told that failure to follow the call in procedure a third time would lead to termination. (Ex 2, Paragraph 6 with verbal documentation attached; and Ex 4, Paragraphs 4, 6, 7, 8 & 9, with verbal documentation attached). The third time on June 4th she was terminated. (Ex 3, 74:16-75:19)

31.   In her deposition testimony Yvette Salinas when asked why she thought it was appropriate to terminate Plaintiff, Ms. Salinas replied: "I do not believe that Ms. Mata at that point could follow the procedure of reporting absences, tardiness." (Ex. 1, 42:5-7.) (For a more complete discussion of Ms. Salinas' reasoning for termination of Plaintiff, see Ex. 1, 43:5-45:25.)

32.   Yvette Salinas had a legitimate reason for terminating Plaintiff's employment. *Mt. Healthy, supra.*

**D. ISSUE THREE:  No conduct of Plaintiff is protected by the First Amendment.**

33.   Plaintiff's speech does not rise to the level of "pubic concern" when considered in the context it was given. She claims she reported large quantities of expired vaccine to her supervisor, Ms. Guajardo, and that her supervisor was probably the first person she told. (Ex. 3, 47:2-8.) She than spoke to the Texas Department of Health after Ms Guajardo told Plaintiff to

11

figure out how to dispose of the expired vaccine properly. And, the Texas Department of Health told her how to handle the expired vaccine, which she did.(Ex. 3, 48:23-50-23.) The Texas Department of Health is the agency that provided the vaccine to the Cameron County Health Department pursuant to a contract between the two entities. (Ex 6 with attached contract..)

34. Plaintiff was hired as the immunization program supervisor. Her duties were to: "... oversee the immunization grant, including the staffing and anything to do with the immunization program, whether it was the contract, compliance or outreach or staffing or interviewing." (Ex. 1, 72:11-15.) And, Plaintiff understood that inventorying the vaccine on hand was part of her job. (Ex. 3, 46:3-14.)

35. Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than an employee. *Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814, 816 (5th Cir. 2000). However, speech may involve both matters of public concern and private matters. *Teague v. City of Flower Mound,* 179 F.3d 377, 381 (5th Cir. 1999). In such "mixed speech" instances, the court looks then to a balance of content, context, and form to determine if the speech is public or private. *Id,* at 382. In "mixed speech" cases, context and form weigh the most heavily. *Id.* at 383. Put another way, the focus is on the hat worn by the employee when speaking rather than the importance of the issue. *Id.* at 382, citing *Gillum v. City of Kerrville,* 3 F.3d 117, 121 (5th Cir. 1993), *cert. den.,* 510 U.S. 1072 (1994).

36. Determination of whether a statement constitutes a matter of public concern is a legal question to be determined by the court from the content, form and context of the statement that is revealed by the record. *Bradshaw, supra,* at 816-17; and, *Ibarra v. Houston I.S.D.,* 84 F.Supp.2d 825, 835 (S.D. Tex. 1999). "If the speech does not concern a matter of public concern, a court

12

will not scrutinize the reasons motivating a discharge that was allegedly in retaliation for that speech." *Bradshaw,* 816.

37.   Considering that Plaintiff's speech about the expired vaccines was to her supervisor and to the agency that had provided the vaccine to the County under a contract with the County, the hat being worn by Plaintiff was that of an employee doing exactly what she was hired to do.

38.   Plaintiff's speech was made as an employee; it is not one of public concern

**E. ISSUE FOUR: State claim – Even if Plaintiff was terminated for refusing to do an illegal act, which is not admitted, County's sovereign immunity is not waived for "Sabine Pilot" claims.**

39.   In her Original Petition, Paragraph 16, Plaintiff alleges that under Texas common law, refusal to commit an illegal act cannot be the basis for termination of an at-will employee. Defendant agrees that is the law in Texas, which is referred to as a "Sabine Pilot" claim, but disagrees that there is in factual basis that she was asked to do an illegal act. *Sabine Pilot Service, Inc. V. Hauck,* 687 SW2d 733, 735 (1985).

40.   More importantly, under Texas common law there is no waiver of sovereign immunity for a "Sabine Pilot" claim. *Salazar v. Lopez,* 88 S.W.3d 351, 353 (Tex.App.– San Antonio 2002), citing, *University of Texas Medical Branch at Galveston V. Hohman,* 6 S.W.3d 767, 777 (Tex.App – Houston [1st Dist.] 1999, pet, dismis'd w.o.j.); *Carroll v. Black,* 938 S.W.2d 134, 135 (Tex.App. – Waco 1996, writ denied); see also, *Redmon v. Dallas Area Rapid Transit,* 2001 WL 182849, at *1 (N.D.Tex. Jan. 22, 2001).

41   Defendant County's sovereign immunity is not waived for Plaintiff's Sabine Pilot claim.

**F. ISSUE FIVE: State claim – Plaintiff's whistle blower claim is barred by the 90 day**

13

**filing deadline.**

42.  Plaintiff announced in open court on 8/30/2004 through her attorney that she was not making a state whistle blower claim. See, V.T.C.A., Govn. Code, Chapter 554.

43.  If such claim is made, it is barred by statue of limitation. Plaintiff must have filed suit under Chapter 554 ". . . not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred; or (2) was discovered by the employee through reasonable diligence." V.T.C.A., Govn. Code, Sec. 554.005.

## VI. Conclusion

44.  Defendant requests this Court issue a final order of dismissal of all claims for the reasons set forth above.

## VII. Prayer

Wherefore, Defendant County respectfully requests that the Court enter the relief requested herein and grant County all other relief with respect to this Motion to which it may be entitled.

> Respectfully submitted,
>
> CIVIL LEGAL DEPARTMENT
> COMMISSIONERS COURT
> 964 East Harrison Street
> Brownsville, Texas  78520
> Telephone: (956) 550-1345
> Facsimile: (956) 550-1348
>
> BY: _____
> Richard O. Burst
> Attorney In Charge
> Texas State Bar No. 00785586
> Federal Bar No. 15515

Dylbia L. Jefferies – Vega
Of Counsel
Texas State Bar #00786516
Federal Bar No. 17065

## CERTIFICATE OF SERVICE

I, Richard O. Burst do hereby certify that a true and correct copy of the foregoing Motion for Summary Judgment has been mailed, certified mail, return receipt requested, or faxed to the following on this 10th day of June, 2005:

David R. Joe
Brewer Anthony Middlebrook
Burley & Dunn, P.C.
1702 E. Tyler St., Ste. 1
Harlingen, Texas 78550

Richard O. Burst